UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

DAVID BAUER,

    Plaintiff,

vs.   CASE NO.: 8:12-CV-614-SDM-TGW

MIDLAND CREDIT MANAGEMENT, INC.,

    Defendant.
_____/

MOTION FOR AWARD OF COSTS AND ATTORNEY'S FEES

Plaintiff David Bauer ("Bauer" or "the plaintiff") hereby moves the Court for an award of attorney fees against defendant Midland Credit Management, Inc. ("Midland," or "the defendant") pursuant to the provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k(a)(3), and the Florida Consumer Collection Practices Act ("FCCPA"; collectively "the Acts"), § 559.77(2), Fla. Stat., and in support thereof states as follows:

    1. The plaintiff is represented in this action by Timothy Condon, Esq., attorney at law.

    2. On August 2, 2012 a Mediation Report (Dkt. #23) was filed in the above action reflecting that "The case has been settled, excepting attorney fees and costs which will be submitted to the Court for decision." Thereafter the Court entered an Order (Dkt. #24) dismissing the action, "subject to the right of any party within sixty days to (1) move for attorney's fees and costs..."

    3. Because the parties herein have agreed in mediation that reasonable fees and costs are to be awarded by the Court, the plaintiff was successful within the meaning of 15 U.S.C.

§1692k(a)(3) of the FDCPA, and within the meaning of § 559.77(2), Fla. Stat., of the FCCPA, both of which provide for award of attorneys' fees upon the successful assertion of any claim thereunder.

4. The plaintiff and the below-signed counsel have agreed that counsel will accept whatever fees are awarded by this Court in lieu of direct payment by the client; as such, the agreement constitutes a contingent fee contract.

5. An Unsworn Declaration of Costs and Attorney's Time Expended together with detailed time records in this action are attached as Exhibit "A," and the time and costs reflected thereon are fair, accurate, and reasonable.

6. The below-signed attorney charges fees at the rate of $400 per hour for litigation similar to this action, and that hourly rate is in line with prevailing market rates for such litigation in the Tampa Bay area by attorneys with similar skills in litigating in both state and federal courts, experience in excess of thirty (30) years of continuously practicing collection law and more recently consumer protection law in the Tampa Bay area, as well as reputations and abilities, as shown by the Unsworn declaration as to Attorney's Fees attached as Exhibit "B".

7. This action has been brought and litigated by a party acting as a "private attorney general" in order to enforce and vindicate important consumer rights specified by the United States Congress in the FDCPA and by the Florida Legislature in the FCCPA. Accordingly, society as a whole benefits from the bringing of such actions, and it has been made clear that both aggrieved consumer and consumer protection attorneys *should be encouraged* to bring such actions. *Valencia v. Affiliated Group, Inc.*, 674 F.Supp.2d 1300, 1304 (S.D. Fla., 2009)

(the FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress' intent that [it] should be enforced by debtors acting as private attorneys general....The purpose behind the prevailing party attorney's fee provision is to encourage competent attorneys to work on cases that might otherwise be avoided"); *see also Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 91, 96 (2d Cir. 2008). The self-enforcing nature of the FDCPA has also been recognized by the Supreme Court, which has referred to "the FDCPA's calibrated scheme of statutory incentives...." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 130 S.Ct. 1605, 1624 (2010).

8. "A request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); further, this Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Housing Authority of city of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

WHEREFORE, Plaintiff David Bauer hereby moves the Court for award of reasonable attorney's fees in the above-captioned action pursuant to the provisions of the federal Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act.

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES

#### I. SUMMARY OF ARGUMENT

A. PLAINTIFF'S CONSOLIDATED ACTIONS WERE SUCCESSFUL, AND THE AWARD OF FEES IS THEREFORE MANDATORY.

  B. THE AMOUNT OF FEES AWARDED SHOULD BE FIGURED ACCORDING TO THE LODESTAR FORMULA.

  C. THE LODESTAR SHOULD NOT BE REDUCED DUE TO NATURE OF REPRESENTATION OR THE AMOUNT OF THE JUDGMENT AWARDED.

  D. THE PLAINTIFF IS ENTITLED TO AWARD OF FEES FOR TIME EXPENDED IN PREPARING THIS MOTION.

## II. ARGUMENT

### A. PLAINTIFF'S CONSOLIDATED ACTIONS WERE SUCCESSFUL.

"The award of attorneys fees' to a prevailing party is mandatory under the FDCPA. *Valencia v. Affiliated Group, Inc.*, No. 07-61381-CIV, 2009 WL 4893113, at *2 (S.D. Fla. Sept. 21. 2009)." *Hepsen v. J.C. Christensen and Associates, Inc.*, No. 8:07-CV-1935-T-EAJ (M.D. Fla. April 1, 2010). Thus, award of attorneys' fees is neither special nor discretionary; rather, it is a recognition of and means of fulfilling Congressional intent that the Act should be enforced by debtors acting as "private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). *See also DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990).

  It should be noted, however, that the facts in this action appear to be unique. Because of those facts—and an anticipated line of argument from Midland with regard to how awardable fees might be cut—some discussion is apt. As outlined in the amended complaint (Dkt. #13), Bauer's separate claims against Midland were based upon actions taken by Midland relating to debt collection activities on different occasions *for three separate alleged debts*. The below-signed counsel has been unable to locate any case law relating to violations of the FDCPA (and other consumer protection statutes) where a debt collector committed

violations against the same putative debtor *for entirely separate debts originally owed to separate companies*, and which were obtained from the original creditors in differing amounts and at different times.

This, in fact, is why this action began as three separate lawsuits filed by Bauer in state court, in the County Court of the 13th Judicial Circuit in and for Hillsborough County, Florida. Each of the three actions was brought by Bauer against Midland for various violations of the FDCPA, the FCCPA, and the federal Telephone Consumer Protection Act ("TCPA"; collectively herein after sometimes referred to as "the Acts") committed while Midland was engaging in consumer collection activity relating to those three separate debts, which were presumably originally owed to Target National Bank, T-Mobile, and Capital One Bank.

The three separate lawsuits were filed by Bauer in state court for the same reason that *Midland* would have perforce filed three separate *collection lawsuits* against Bauer in state court if it had availed itself of it's remedy of filing suit on each of the three debts. Why would the three debts not have been sued upon in a single multi-count action? Because Midland would have had to prove how it came into ownership of each different debt—presumably involving different purchases at different times of differing debt portfolios from different entities. Because Midland *had* to be the assignee of each of the three debts at the time it was trying to collect on each of them,[1] then as assignee of three separate debts it "stood in the shoes" of each of the original creditors—Target National Bank, T-Mobile, and Capital One

---

[1] If it were not, then its entire course of action attempting to collect the three debts would have been in blatant violation of both the FDCPA and the FCCPA, since it would not have had the legal *right* to collect the debts.

Bank—meaning that Midland would have been tasked with proving its entitlement to collect the three debts that arose at differing times, in differing amounts, and pursuant to three entirely different contractual agreements.[2]

Looking at the question from the obverse, Bauer was confronted with differing considerations when deciding whether to sue in a single action or three separate lawsuits. The decision was made to file three separate lawsuits in order to bypass the well-settled fact that under the FDCPA aggrieved consumers may collect a maximum of $1,000 in statutory damages "in the case of any action by an individual...." 15 U.S.C. § 1692k(a)(2)(A).[3] The three small claims actions brought by Bauer were then removed to this Court by Midland.

Although the precise fact-situation here has apparently not been ruled upon by any other court, multiple lawsuits by wronged individuals under the FDCPA and FCCPA against the same debt collector are not unheard of. *See, e.g., Goins v. JBC & Assoc., P.C.*, 352 F.Supp.2d 262, 267 (D. Conn. 2005), where the court noted "There is no prohibition in the FDCPA against separate lawsuits for separate statutory violations of the FDCPA by the same defendant. Where, as here, the subsequent action is not duplicative and would not be barred under the claim preclusion doctrine, plaintiff may avail herself of the serendipity of an additional FDCPA violation by the same defendant subsequent to initiation of a prior lawsuit and thereby avoid a per action damages limitation, as is undoubtedly plaintiff's strategy here."

---

[2] It is of course possible that Midland in filing suit for collection may have attempted to prove all three debts under all three different contracts—and its position as assignee in each instance—in a single multi-count Statement of Claim in small claims court; but in doing so it might have risked attack in the action for multifariousness. *Carbonell v. American Int'l Pictures, Inc.*, 313 So.2D 417, 418 (Fla. 3d DCA 1975) ("[M]ultifariousness occurs when distinct and disconnected subjects, matters or causes are joined in the same complaint....")

[3] No actual damages were claimed by Bauer in any of the three lawsuits.

However, the ruling in *Goins* would appear to beg the question before the Court: The instant case involves violations that occurred prior to the three lawsuits being filed, and involves different debts. One case that discusses the issue in some depth is that of *Beeders v. Gulf Coast Collection Bureau*, 632 F.Supp.2d 1125 (M.D. Fla. 2009).[4] There, in ruling that separate temporally displaced violations of the FDCPA would not support multiple awards of statutory damages under that act, the court relied mainly upon the doctrine of claim preclusion, which "'prevent[s] the splitting of a single course of action'[sic]....Under Florida law, claim preclusion applies when the relief, cause of action, parties, and the quality or capacity of the parties involved in the claim are *all identical*...." *Id.*, at 1128 (emphasis added). Thus, claim preclusion does not apply in the instant case because "the quality or capacity" of Midland is different with respect to each of the separate debts it was seeking to collect.

How could it be otherwise, when Midland was attempting to collect three separate debts as an assignee and thus "standing in the shoes" of three different entities, each of which had a different contractual agreement with Bauer. "An assignment is a transfer of all the interests and rights to the thing assigned. The assignee thereafter stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name." *Price v. Rli Ins.*, 914 So.2d 1010, 1013 (Fla. 5th DCA 2005) (citations omitted).

In essence, then, Midland could be said to have been, in a legal sense, *T-Mobile* with

---

[4] A action which was brought and litigated by the below-signed counsel. Ironically, the *Beeders* action also featured a ruling by Judge Kovachevich that found aggrieved consumers bringing actions under the FCCPA *were* eligible for multiple awards of statutory damages for temporally displaced violations of that state consumer protection law (the language of the statute has since been changed, effective October 1, 2010, and no ruling has yet been made as to the current language with respect to multiple awards of statutory damages).

respect to one of the debts, *Target National Bank* with respect to another, and *Capital One Bank* with regard to the third. The inescapable conclusion from those facts is that "the quality or capacity" of Midland with regard to each debt was essentially different, not "identical" at all as the court in the *Beeders* case ruled.

In sum, with respect to the filing of three separate lawsuits relating to Midland attempting to collect the three separate debts from Bauer, it would have been a disservice to Bauer *not* to have filed three separate actions, given the non-claim-preclusive and thus permissible nature of the three claims brought under the FDCPA.[5] With that observation made, however, there are two points that should be brought to the Court's attention with regard to the time and billing records attached; they are as follow:

1. First, an overall perusal of the purely chronological time entries shows that although there were originally three separate lawsuits, time expended does not appear to have been "tripled." On the contrary, the time records prior to the consolidation of the three actions by this Court appear more like those from a single cases than three actions in triplicate. The reason for this is that once a single complaint was figured out and drafted, it took very little time to draft the second and third complaints. Similarly, the "cost in time" of drafting additional summonses was essentially "zero" for each additional action filed. These observations are provided to the Court in anticipation of entreaties by the defendant to cut all the time records "by one-third." If that were sound advice, the time records would clearly reflect "triple time expended." But they do not, for the good reasons explained above.

---

[5] This Court in its Order entered on May 14, 2012 which consolidated the three separate actions, stated that "Each action involves the same parties, the same counsel, the same governing law, the same causes of action requesting the same relief, and similar, intertwined facts that occurred around the same time." This observation, however, was not entirely accurate, for the reasons given and discussed above.

2. Secondly, the time and billing records attached are notable with respect to the amount of "communicating" that went on. Although time entries under the old, pre-electronic practice of law have tended to "cluster" when urgent action was being taken in litigation, this tendency becomes even more notable with today's communications and other activities being assisted through computers and other electronic means. Thus, while it appears that research time has shrunk, communicating "back-and-forth" now seems to take place more through rapid, seriatim email exchanges than through the traditional telephone conferences. This reality can tend to make it seem like a single time entry has been mistakenly repeated over and over; however, in the time records provided at least, that is not the case. For instance, in the chronological time records provided with this motion, that type of "activity confluence" can be seen occurring on rows 18 through 23 where there appear six entries of "Receive and review email from client; prepare and send responding email," all having occurred on a single day, February 5, 2012. Similar patterns can be seen on July 19th, July 24th, August 1st, and at other times. These are not "mistakenly repeated" time entries; they are artifacts of the new electronic world that all lawyers are increasingly being drawn into in the practice of law.

Accordingly, having prevailed through settlement in mediation in this action with regard to all three separate causes of action, and the parties to this action having agreed to an award, fees and costs should be awarded by this Court in their entirety to the plaintiff pursuant to the provisions of both the FDCPA and FCCPA.

### B. THE ATTORNEYS' FEE AMOUNT SHOULD BE FIGURED ACCORDING TO THE LODESTAR FORMULA.

The Supreme Court has ruled that "[t]here is a strong presumption that the lodestar is sufficient...." *Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010). Further "[w]e have noted that the

lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee....We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar '[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" *Id.* (Internal citations and quote marks omitted.) Accordingly, the lodestar method should be used in awarding fees under the FDCPA. *Moton v. Nathan & Nathan, P.C.*, 2008 WL 4747423 (11th Cir. Oct. 28, 2008).

The first step in determining a lodestar amount is to arrive at a reasonable hourly billing rate for services provided. An attorney's reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988), and "the party seeking attorneys' fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates, which normally requires more than the affidavit of the attorney performing the work." *Hepsen v. J.C. Christensen and Associates, Inc.*, No. 8:07-CV-1935-T-EAJ (M.D. Fla. April 1, 2010) (citation and internal quotations omitted).

Although the fee applicant bears the burden of establishing entitlement and documenting appropriate hours and hourly rates, *Webb v. Bd. of Educ. of Dyer County*, 471 U.S. 234, 242 (1985), "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because [t]here is no precise rule or formula for making these determinations.... Further, [t]he court is itself an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an

independent judgment either with or without the aid of witnesses as to value." *Hepsen v. J.C. Christensen and Associates, Inc.*, No. 8:07-CV-1935-T-EAJ (M.D. Fla. April 1, 2010) (citations and internal quotations omitted).

The below-signed attorney has expended time in this litigation as reflected in the Unsworn Declaration attached as Exhibit "A". Those amounts of time were reasonable and necessary to reach the successful results in this litigation, and in addition the hourly rate of $400 is reasonable, all as shown by the Unsworn Declaration Under 28 U.S.C. § 1746 as to Attorney's Fees attached as Exhibit "B".[6] *See Gradisher v. Check Enforcement Unit, Inc.*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (ten years ago attorney fee rates of $300 to $400 per hour were reasonable for a lawyer with a great deal of experience in bringing FDCPA cases).[7]

Thus, the amount that should be awarded in this action pursuant to the lodestar calculation is reflected in the Unsworn Declaration of Costs and Attorney's Time Expended attached.

### C. THE LODESTAR MAY NOT BE REDUCED DUE TO NATURE OF CASE OR AMOUNT OF THE JUDGMENT AWARDED.

---

[6] The below-signed counsel has been awarded $350 per hour in many cases in both state and federal court litigation of this type for legal services provided and hours expended for some years prior to January 4, 2012. *See, e.g. Beishir v. Chase Home Finance, LLC*, 2008 U.S. Dist. LEXIS 15417, *3-4 (M.D. Fla. Feb. 27, 2008); *Bacelli v. Millennium Anesthesia Care, P.A.*, Case No. 09-18474-H (County Court, 13th Judicial Circuit, Hillsborough Co., Fla., August 11, 2009); *Miles v. Bank of America, N.A.*, No. 09-SC-1104-I (County Court, 13th Judicial Circuit, Hillsborough Co., Fla., Dec. 10, 2009); *Kahmeyer v. Federal Credit Corp.*, No. 08-CC-38926-I (County Court, 13th Judicial Circuit, Hillsborough Co., Fla., February 27, 2012); *Beeders v. Financial Corp. of America*, No. 09-CC-927-K (County Court, 13th Judicial Circuit, Hillsborough Co., Fla., August 20, 2010).

[7] The below-signed counsel has appeared in and litigated scores of consumer protection actions under the FDCPA and other such federal and state statutes in both state and federal courts in the Tampa Bay area and elsewhere, and has also taken appeals and appeared before the 11th Circuit Court of Appeals in cases of this type.

The plaintiff seeks an award of attorney fees based upon the lodestar formula, nothing less and nothing more. Indeed, "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995) (citation omitted). Thus, the award of attorney fees should not be limited by the amount of damages: As long as the plaintiff is successful, he or she should not be awarded less than the lodestar amount of attorney fees. "In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986) (footnote omitted). See *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996); *Carroll v. Wolpoff & Abramson*, 961 F.2d 459 (4th Cir. 1992), *cert. denied*, 505 U.S. 905 (1992).

The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions protecting consumer rights are more important than the small damage awards allowed under the FDCPA indicate. This is why when a provision for counsel fees is included in a regulatory act, it constitutes recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney fees: "If the citizen does not have the resources, his day in court is denied him; the Congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986).

The Third Circuit has amplified this concept, stating as follows:

> **Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and**

> environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3rd Cir. 1988). "Congress has relied on such plaintiffs to act as private attorneys general." *Id.* at 1450, n.13.

### D. THE PLAINTIFF IS ENTITLED TO AN AWARD OF FEES FOR THE TIME EXPENDED IN PREPARING THIS MOTION.

The affidavits submitted by counsel for the plaintiff detail the time expended in this litigation up to the date hereof, including time expended preparing this motion for award of attorney fees. An award of fees is appropriate for the time expended in pursuing a motion for award of attorney fees. *Haitian Refugee Center v. Meese*, 791 F.2d 1489 (11th Cir. 1986). "[A]ttorney's fees may be awarded for time spent litigating the fee claim." *Johnson v. State of Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979). *See also Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521 (D.C. Cir. 1984) (hours reasonably devoted to request for fees are compensable).

### III. CONCLUSION

Based upon the above authorities, the lodestar calculation should be used to award attorney fees to counsel for the plaintiff in the amount of $27,320 together with costs in the amount of $1,050, for a total of $28,370.

Respectfully submitted,

s/ Timothy Condon

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2012 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

    s/ Timothy Condon
TIMOTHY CONDON, ESQ.  FBN 217921
307 S. Fielding Ave., #2, Tampa, FL  33606
Telephone 813-251-2626 Fax 813-200-3395
Email: tim@timcondon.net
ATTORNEY FOR PLAINTIFF